Ronald E. Neidert, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs to Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Harold Tull,* for petitioner.

*Charles G. Hasson,* Assistant Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, October 13, 1982:

Affirming a referee's decision, the Unemployment Compensation Board of Review denied claimant Ronald Neidert benefits because it found that he had terminated his employment with the Commonwealth's Department of General Services (department) voluntarily and without cause of a necessitous and compelling nature.[1]

Most of the facts in this case are not in dispute. By letter dated June 24, 1980, the department informed the claimant that in one month his position as a dayshift custodial services manager would be eliminated. The letter also stated that the claimant could apply for a less remunerative position[2] on the 4:00 p.m. to

---

[1] Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1).

[2] In his testimony, claimant admitted that the lower wage was not material to his decision:

QR : But it was not the pay, it was the hours?

AC : That was the main thing, yes ma'am.

QR : So the pay is not too material to your decision not to take it.

AC : Had they offered me a daylight position at that salary, there would have been no problem.

Hence, we need not consider whether the offer of lower wages materially affected claimant's decision not to pursue further employment with the department. *Cf. Morysville Body Works, Inc. v. Unemployment Compensation Board of Review,* 59 Pa. Commonwealth Ct. 486, 430 A.2d 376 (1981) (nearly one-fourth reduction in salary so substantial a decrease in wages as to constitute necessitous and compelling cause).

12:00 p.m. shift. The board found that had the claimant applied for the latter position, he would have received it.[3] The claimant declined the offer, however, because he believed that late-shift duties would disrupt his domestic tranquility.[4]

---

[3] Finding of Fact No. 7. The claimant asserts that the department did not make him a firm offer of employment but merely invited him to apply for the late-shift position. He contends that he was terminated involuntarily and that consequently the board should not have decided this as a voluntary quit case. We cannot agree. *Miller v. Unemployment Compensation Board of Review*, 60 Pa. Comonwealth Ct. 410, 431 A.2d 1138 (1981) (burden of proving involuntary termination rests upon claimant).

Here, where the finding was against the claimant, our scope of review is limited to reversing only for a capricious disregard of the evidence. *Coogler v. Unemployment Compensation Board of Review*, 64 Pa. Commonwealth Ct. 456, 440 A.2d 692 (1982).

Here, although the letter merely "invited" the claimant to apply for a late-shift position, at least one of the department representatives clearly testified that the claimant would have had the job had he applied for it:

QR: Mr. Smith, was the claimant offered work as a Custodial Services Manager I?

EW: Well I would have to say according to this letter that he received from the Department of General Services, I would interpret that as saying yes. I know this if I can make an aside here if I could please, as the Chief of the Division, I know personally that Mr. Neidert could have had the position if he had so applied.

No doubt the referee and the board found the testimony of the department's witness more credible than the claimant's testimony. Thus, we cannot disturb the board's finding of a firm offer, given our limited scope of review.

[4] Claimant testified that he had worked the late-shift in 1977 and 1978 with the following results:

AC: My wife works during the day and of course I was working at night and it just created a hardship there for us. I didn't see her all week. Of course, she didn't see me and I ended up with a week-end marriage and it didn't work for us. . . .

The claimant asks us to decide whether the possibility of disturbance of marital harmony constitutes a necessary and compelling cause for refusing an offer of late-shift employment. Given the evidence presented and our limited scope of review in unemployment compensation cases, we find that it does not.

The general terms of the voluntary quit disqualification provisions, in Section 402(b)(1) of the Act, now govern the unemployment compensation eligibility of any applicant who terminates his employment for domestic reasons, as well as for other reasons. *Snow v. Unemployment Compensation Board of Review*, 61 Pa. Commonwealth Ct. 396, 433 A.2d 922 (1981); *see also Wallace v. Unemployment Compensation Board of Review*, 38 Pa. Commonwealth Ct. 342, 393 A.2d 43 (1978),[5] invalidating as unconstitutional the statutory provision which disqualified claimants terminating for domestic reasons.

---

The claimant also alluded to physical and emotional distress which he attributed to his employment. He offered no medical evidence, however, to suggest that his health problems were related solely to his late-shift assignment in 1977 and 1978. Moreover, the board did not mention the claimant's health problems in its findings of fact. Although the claimant would have us now consider his health a factor in our review of the board's decision, we cannot do so, because he never met his burden of proof at the hearings. *Colduvell v. Unemployment Compensation Board of Review*, 48 Pa. Commonwealth Ct. 185, 408 A.2d 1207 (1979) (claimant has burden of proving that he terminated his employment for cause of a necessitous and compelling nature); *Deiss v. Unemployment Compensation Board of Review*, 475 Pa. 547, 381 A.2d 132 (1977) (in voluntary quit cases, claimant must present competent testimony that adequate health reasons existed to justify termination).

[5] Claimant asserts that this case should have been decided under Section 402(a) of the Act, 43 P.S. §802(a), which deals with an offer of employment being made to one who is idle. We do not agree. Claimant received the letter of termination which apprised him of a vacancy one month before his tenure as a day-shift manager expired.

348

We are persuaded by the record that claimant has not demonstrated that his termination was for cause of a necessitous and compelling nature. In *Snow,* we held that a one-hundred mile relocation, which produced "heated disagreements" and a "great deal of friction" in a marriage, did not constitute a necessitous and compelling cause for voluntarily quitting a job to return home. 61 Pa. Commonwealth Ct. at 399-400, 433 A.2d at 924.

Between the facts in *Snow* and the facts of this case, the only difference is that, instead of relocation, this claimant offers a change in shift as the basis for his fear of potential marital discord. Yet, we have held that a change in shift does not constitute cause of a necessitous and compelling nature. *Stalc v. Unemployment Compensation Board of Review,* 13 Pa. Commonwealth Ct. 131, 318 A.2d 398 (1974). Accordingly, we affirm.

ORDER

Now, October 13, 1982, the order of the Unemployment Compensation Board of Review, Decision No. B-189141-B, denying benefits to Ronald E. Neidert, is hereby affirmed.